*149 OPINION OF THE COURT
Per Curiam.
Judgment entered February 16, 2000 affirmed, with $25 costs.
In this action by plaintiff, a textile converter, for the January 1995 conversion of certain unfinished fabric stored in defendant’s warehouse since late 1990, the trial court dismissed the complaint at the close of the evidence based upon defendant’s enforcement of a warehouseman’s lien. Plaintiff contends that defendant’s documents were insufficient to constitute a valid warehouse receipt (a condition precedent to obtaining a warehouseman’s lien) and that defendant failed to comply with the warehouseman’s lien foreclosure procedures set forth in UCC 7-210 (2), resulting in defendant’s conversion of plaintiff’s bailed goods. We affirm.
Defendant’s billing statement, invoice and correspondence to plaintiff were sufficient to qualify as a warehouse receipt (UCC 1-201 [45]; 7-202) although not denominated as such a document. A warehouse receipt “need not be in any particular form” (UCC 7-202 [1]). Such a receipt “must conform substantially to the statutory requirements, but it need not list all items listed in the statute” (93 CJS, Warehousemen and Safe Depositories § 27; Evergreen Intl. Servs. Corp. v Wallant Intl. Trade, 228 NJ Super 477, 480-481, 550 A2d 175, 177-178; Smithers v Tru-Pak Moving Sys., 121 NC App 542, 468 SE2d 410, review denied 343 NC 514, 472 SE2d 20). While UCC 7-202 (2) states that the omission of certain essential terms in the warehouse receipt exposes the warehouseman to liability for damages to an injured person, the statute does not specifically provide that receipts not conforming fully with its requirements are invalid.
Nuclear Facilities v Advance Relocation & Stor. (173 AD2d 802), relied upon by plaintiff, is inapposite and does not warrant a contrary result. The document of title involved there, unlike the collective documents here, omitted several essential terms, including the “rate of storage” (UCC 7-202 [2] [e]) and the “signature of the warehouseman” (UCC 7-202 [2] [g]) and was issued solely in connection with the transportation of goods, rather than the business of storing goods for hire. Contrasted with the bill of lading in Nuclear Facilities (supra), defendant’s documents here included the rate of storage and handling charges, the signature of the warehouseman, the location of the warehouse where the goods were stored, the date *150 of issue of the receipt, the consecutive number of the receipt, a description of the goods or of the packages containing them and a statement of the amount of advances made and of liabilities incurred. The only missing term was “a statement whether the goods received will be delivered to the bearer, to a specified person, or to a specified person or his order” (UCC 7-202 [2] [d]).
Since the goods in question involved warehoused merchandise of a merchant-bailor, rather than noncommercial storage of household goods, this case is governed by the simplified foreclosure procedures set forth in UCC 7-210 (1), rather than the more detailed and stricter requirements of UCC 7-210 (2) (Shimamoto v S&F Warehouses, 257 AD2d 334, lv dismissed in part and denied in part 94 NY2d 837; Ellison v Midtown Moving & Stor., 188 Misc 2d 703 [App Term, 1st Dept]; 3 White and Summers, Uniform Commercial Code § 28-6, at 314 [Practitioner’s 4th ed]). Applying that simplified standard, defendant sold the goods at public auction in a “commercially reasonable” manner, following notice to plaintiff of the amount due and the nature, time and place of the proposed sale (UCC 7-210 [1]).
Although defendant’s notice of sale did not contain the requisite statement that any person claiming an interest in the goods was entitled to bring a special proceeding under UCC 7-211 to challenge the validity of the lien or the amount claimed (UCC 7-210 [1]), defendant’s oversight does not necessarily constitute a “willful violation” of the statute (Shimamoto v S&F Warehouses, supra, 257 AD2d at 339), warranting reinstatement of plaintiff’s claim of conversion. Significantly, plaintiff did not dispute the amount of storage and handling charges due, acknowledged at the January 1999 trial that the fabric had deteriorated after several years of storage, conceded that it never demanded return of the fabric after the retitling of the fabric to plaintiff following a certain arbitration award dated August 24, 1994 and did not want the fabric back from defendant, essentially abandoning it.
Plaintiff knew long ago that defendant dyer’s work was never completed and that the fabric had been left at defendant’s facility “for [plaintiff’s] disposition” since 1990 based upon a chargeback from another textile converter which claimed that the fabric was defective. Although that related billing dispute was the subject of the aforementioned 1992 arbitration proceeding, plaintiff failed to raise the storage fee issue at the arbitration hearing.
*151 Finally, we note that even where a warehouseman does not establish the validity of the lien, the goods may still be sold pursuant to the warehouseman’s option to terminate the storage and demand payment (UCC 7-206), since the warehouseman’s “lien remedy under UCC 7-209 and 7-210 is not exclusive” (Dupont v Joedon & Co., 107 AD2d 369, 372; 44A NY Jur 2d, Documents of Title §§ 124, 161).
We have considered plaintiffs remaining arguments and find them to be without merit.